THE BROWN LAW GROUP, P.C.
Rodney A. Brown, Esq. (7558)
2 Grand Central Tower
140 East 45th Street, 25th Fl.
New York, New York 10017
(212) 421-1845

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                                                   :
**ROBERT LEWIS ROSEN**                                             :
**ASSOCIATES, LTD.,**                                              :
                                                                   :
                                   **Petitioner,**                 :
                                                                   :
                    -against-                                      :        **07 Civ. 11403**
                                                                            **Judge Richard J. Holwell**
                                                                   :
**WILLIAM WEBB,**                                                  :
                                                                   :
                    **Respondent.**                                :
                                                                   :
------------------------------------------------------------------x


**MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**PETITIONER'S MOTION TO VACATE ARBITRATION AWARD AND**
**IN OPPOSITION TO RESPONDENT'S CROSS-MOTION FOR SANCTIONS**

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    I.    Webb Has Failed To Demonstrate That
        Arbitrator Reiss Did Not Manifestly Disregard The Law . . . . . . . . . . . . . . . . . . . . . 9

    II.   Webb's Cross-Motion For Sanctions Should Be Denied . . . . . . . . . . . . . . . . . . . . . 17

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## TABLE OF AUTHORITIES

**Cases**                                                                                       **Page**

Dutch Church v. 198 Broadway,
76 N.Y.2d. 411 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

Int'l Chem. Workers Union v. BASF Wyandotte Corp.,
774 F.2d 43 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18

Levy v. Carol Mgmt. Corp.,
260 A.D.2d 27 (1st Dept. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Matter of Gordon v. Marrone,
202 A.D.2d 104 (2d Dept. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

Matter of Silverman (Benmor Coats),
61 N.Y.2d 299 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Matter of Sprinzen,
46 N.Y.2d 623 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Matter of Weinrott,
32 N.Y.2d 190 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Savino,
2007 WL 895767 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Threlkeld & Co. v. Metallgesellschaft,
923 F.2d 245 (2nd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 12

Universal Computer Services, Inc. v. Dealer Services, Inc.,
2003 WL 21685567 (E.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20


**Statutes and Rules**

9 U.S.C. § 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed.R.App.P.38. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

Fed.R.Civ.P.54(d)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

ii

THE BROWN LAW GROUP, P.C.
Rodney A. Brown, Esq. (7558)
2 Grand Central Tower
140 East 45th Street, 25th Fl.
New York, New York 10017
(212) 421-1845

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                             :
**ROBERT LEWIS ROSEN**                                       :
**ASSOCIATES, LTD.,**                                        :
                                                             :
                    **Petitioner,**                          :
                                                             :
        **-against-**                                        :        **07 Civ. 11403**
                                                             :        **Judge Richard J. Holwell**
                                                             :
**WILLIAM WEBB,**                                            :
                                                             :
                    **Respondent.**                          :
                                                             :
-------------------------------------------------------------x

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF PETITIONER'S MOTION TO VACATE ARBITRATION AWARD AND IN OPPOSITION TO RESPONDENT'S CROSS-MOTION FOR SANCTIONS

This Memorandum of Law is respectfully submitted on behalf of Petitioner

Robert Lewis Rosen Associates, Ltd. (hereinafter, "Petitioner" or "RLR"), in further support of

its Petition for an Order to vacate the arbitration award, pursuant to 9 U.S.C. § 10, issued by

Arbitrator Howard Reiss on November 28, 2007 granting Respondent William Webb's

(hereinafter, "Webb") motion to dismiss RLR's claim for arbitration of attorneys' fees, and in

opposition to Webb's Cross-Motion for Sanctions dated January 9, 2008.

## PRELIMINARY STATEMENT

Although Petitioner intends to keep the tone of this memorandum professional

and address only the relevant legal issues currently before the Court, namely Arbitrator Reiss'

manifest disregard of the law in failing to find RLR's statement of claim arbitral and the merit (or lack thereof) of Respondent's cross-motion for sanctions, RLR cannot simply acquiesce to Respondent's fallacious arguments and dishonest statements that proliferate throughout Respondent's Memorandum of Law in Opposition to Petition to Vacate Award and in Support of Cross-Motion for Sanctions (hereinafter, "Resp's Opp. Memo").

It is readily apparent from page 1 of Resps' Opp. Memo, that Webb is more interested at bar in casting spurious *ad hominem* attacks upon Petitioner than responding to the legal and factual arguments asserted in Petitioner's Memorandum of Law in Support of Motion to Vacate (hereinafter, "RLR's Memo").  In fact, Resp's Opp Memo, beginning with the "Summary of Arguments", is not so much a memorandum of law, as it is a fiction -- a fantastical story with the transparent and disingenuous intention of portraying RLR as a villain obsessed with revenge, while Webb falsely postures himself as the hapless victim.  To put it simply, Webb attempts to turn the truth on its head.

RLR seeks to vacate the Order of Arbitrator Reiss dated November 28, 2007 (hereinafter, the "Order").  For the reasons set forth in RLR's Memo and below, it is RLR's position that Arbitrator Reiss, by refusing to exercise the American Arbitration Association's ("AAA") jurisdiction, ignored the inclusive language of the broad arbitration clause in the Agreement, and thus, manifestly disregarded the law and the express terms of the arbitration clause between RLR and Webb.  RLR's Motion to Vacate has no ulterior motives, and it is certainly neither an abuse of the legal process, nor an attempt to "bleed" Webb of attorney's fees. RLR is exercising, in a timely manner, its right to move to vacate Arbitrator Reiss' Order; Webb's argument that RLR's motion is sanctionable is wholly meritless.[1]

---

[1] Even Arbitrator Reiss conceded that Webb "acted in a questionable manner in order to frustrate and delay Claimant's recovery of the final award…." Petition, Ex. F.

RLR's Statement of Claim before Arbitrator Reiss alleged that Webb acted in bad faith when refusing to pay the November 2003 Judgment, which confirmed the July 31, 2003 Final Award of Arbitrator Edelman (hereinafter, the "Final Award"). A copy of the Final Award is annexed as the last four pages of Exhibit B to the Petition. As a result of Webb's unjustified unwillingness to pay the November 2003 Judgment, RLR was unable to obtain all the monies due pursuant to the November 2003 Judgment until in or about May 30, 2007 (approximately three years and a half years after the November 2003 Judgment) and only after RLR was forced to incur huge legal fees resulting from multiple litigations in New York, New Jersey and California. Indeed, the facts establish that RLR has been forced to participate for over a period of five years in nine different proceedings (including, Webb's still pending action against RLR in California). See Brown Affidavit, Par. 9.

As such, Webb's argument that RLR is attempting to "bleed" Webb dry via continued legal fees reflects the very definition of hypocritical argument. The facts unequivocally establish that Webb, for over a period of five years, has engaged in the very conduct it now accuses RLR. In fact, Arbitrator Reiss, although refusing to exercise jurisdiction, could not deny that Webb "acted in a questionable manner in order to frustrate and delay Claimant's recovery of the final award." See Petition, Ex. F. Due to Webb's efforts to frustrate RLR's recovery of the November 2003 Judgment, RLR has incurred legal fees that exceed the amount recovered pursuant to said Judgment. In the end, RLR's enforcement of the November 2003 Judgment was nothing more than a pyrrhic victory; Webb's conduct subsequent to the Final Award frustrated the collection of the Final Award.

Contrary to what Webb would have the Court believe, throughout this entire dispute, Webb was bound and determined not to pay RLR the amount due pursuant to the

Judgments. With respect to Webb's first partial payment of the November 2003 Judgment in February 2005, said payment was only made after RLR filed a fraudulent conveyance action in New Jersey against Webb and his wife for fraudulent conveyance. Thus, RLR was only able to receive the partial payment after incurring substantial attorney's fees in order to compel Webb to make the partial payment. See Brown Aff, Par. 9 (iv) and (v).[2]

Although paying a portion of the Judgment, Webb continued with his obdurate efforts to frustrate RLR's ability to enforce the entirety of November 2003 Judgment. Webb refused to make any of the "additional payments" set forth in the Final Award on the grounds that the November 2003 Judgment did not expressly confirm that portion of the Final Award. See Brown Aff, Par. 9(ii) and (iii). Both the Southern District of New York (in June 2005) and the Second Circuit Court of Appeals (in January 2007) found Webb's muddled interpretation of the straight-forward terms of the November 2003 Judgment meritless, and that the November 2003 Judgment confirmed the Final Award in its entirety.

Despite the Second Circuit's Order affirming Judge Baer's determination that the November 2003 Judgment confirmed the entire Final Award, Webb was still resolute on

---

[2] Shortly after domesticating in New Jersey the November 2003 Judgment, RLR learned that Webb had engaged in a series of transactions designed to frustrate RLR's efforts to collect upon the New Jersey domesticated Judgment. See Brown Reply Aff., Pars. 5-7. For example, RLR learned that Webb had removed all monies from his bank accounts and transferred the monies into his wife and/or adult children's bank accounts. See, e.g., Cynthia Webb Dep. Tr. dated November 11, 2004 at 118 L.8 ----120 L.19, pertinent pages of which are annexed to the Brown Reply Aff. as Ex. B. Webb also transferred his interest in his marital home, with a fair market value of over $1,000,000, to his wife for approximately $47,000. See Cynthia Webb Dep. Tr. at 29 L. 22----32 L. 23, Ex. B. During the deposition of Cynthia Webb, RLR learned that the $47,000 "payment" was actually Webb's own money that he deposited into Cynthia Webb's bank account that Cynthia Webb, in turn, used to "pay" Webb for his share of the Webb marital home. See Cynthia Webb Dep. Tr. at 37 L.4-23, Ex. B. In essence, in an effort to evade paying the New Jersey domesticated Judgment, Webb paid himself $47,000 and gave his wife his share of the marital home. Cynthia Webb conceded during her deposition that the conveyance was done to frustrate RLR's ability to enforce the Judgment against Webb:

> Q.    **Was the [47 Cobb Road] conveyance done in an effort to avoid recovery by RLR on its judgment against your husband?**
> A.    **Yes, partly**. See Cynthia Webb Dep. Tr. at 30 L. 2-10, Ex. B.
> [Emphasis added.]

Based on the foregoing, Webb's description of RLR's New Jersey action as a "cynical gambit" (Resp's Opp Memo, p. 4), is both cavalier and inaccurate, without the pressure of the New Jersey action, Webb clearly would have never begun paying the November 2003 Judgment.

frustrating RLR's enforcement of November 2003 Judgment. Webb's delivery of the last check due in the amount of $98,390.21, representing the last amount due, pursuant to the "additional payment" set forth in the Final Award, was conditioned upon RLR executing a general release in favor of Webb. See a copy of the letter from Jeffrey Ullman to Rodney A. Brown dated January 30, 2007, annexed to the Brown Reply Aff. as Ex. C. Of course, Mr. Ullman and Webb had no right to condition the payment of the $98,390.21 upon RLR entering into a general release, as said payment was required pursuant to the terms of the November 2003 Judgment. After much correspondence between RLR and Webb's counsel on this issue, it became apparent, that not only would Webb not budge from his meritless position, but moreover, because Webb had no right to demand a release from RLR, counsel for RLR had an ethical obligation to disburse the last $98,390.21 to RLR. See Brown Reply Aff. at Pars. 9-13. On or about May 30, 2007, counsel for RLR disbursed $98,390.21 to RLR.

Contrary to Webb's pleas to this Court for this matter to come to a "merciful end"; that RLR has a "personal vendetta" against Webb; and that it was RLR who engaged in an "abuse of the legal process", in July 24, 2007, Webb filed a grievance with the Departmental Disciplinary Committee, Supreme Court, Appellate Division, First Judicial Department against Rodney A. Brown and The Brown Law Group, P.C. Webb's grievance alleged that Rodney A. Brown and The Brown Law Group, P.C. violated departmental ethic guidelines in distributing the $98,390.21 to RLR without conceding to Webb's extortionate demand that RLR enter a general release. Id. The Departmental Disciplinary Committee, by letter dated November 30, 2007, dismissed Webb's grievance as being without merit. A copy of the November 30, 2007 letter is annexed to the Brown Reply Aff. as Ex. D.

Based on the foregoing, Webb's argument that RLR has engaged in a "personal vendetta" and "nasty war of attrition" with the intent to "bleed" Webb of legal fees is an outrageous fabrication. Moreover, Webb's filing of the meritless grievance, with the assistance of his counsel, Mr. Ullman, is exactly the manner of conduct that merits the description used by Webb to mischaracterize RLR's conduct (i.e., "personal vendetta" and a "nasty war of attrition.")

Perhaps most sanctimonious about Webb's solicitations upon the Court to deny RLR's Motion to Vacate so that the disputes between RLR and Webb can allegedly, "finally, mercifully, come to an end" (Resp's Opp Memo, p. 6.), is Webb's omission that on or about July 26, 2007, Webb filed a new action against RLR in California. See Brown Aff., Par. 9(ix).[3] Webb's action in California is seeking "to disgorge to [] Webb any monies [RLR] may receive from Webb (or others who may be in possession of Webb's monies) in connection to execute on the [November 2003 Judgment]...." See Webb's Petition before the California Labor Commissioner (hereinafter, "CLC") at page 4, par. B of, Ex. C to Petition. Thus, Webb's pleas to the Court for finality are feigned; for even if the Court were to deny RLR's Motion to Vacate, the dispute between the parties would not end as Webb has appealed the CLC's Order dismissing Webb's Petition before the CLC.[4]

On or about October 3, 2003, Webb filed a petition before the CLC that sought the disgorgement of Arbitrator Edelman's Final Award and RLR's November 2003 Judgment confirming same. Shortly thereafter, RLR filed motion to dismiss Webb's petition before the CLC. See Brown Aff. Par. 9(viii). Pursuant to the CLC's Order dated June 29, 2007, Webb's

---

[3] Apparently, pursuant to California law, an appeal of a CLC Order is tantamount to a new proceeding.
[4] Mr. Ullman, Webb's counsel, was no doubt aware of Webb's still pending action in California. Annexed as Ex. E to Mr. Ullman's Affirmation submitted with Respondent's Cross-Motion, are Mr. Ullman's billing records that show on billing entry dates of 3/23/07, 11/30/07 and 12/20/07, Mr. Ullman's communication with attorney Brian Cousin of Greenberg Traurig. Mr. Cousin is Webb's current counsel in the California action and previous counsel in the initial Arbitration before Arbitrator Edelman.

petition was dismissed on grounds of *res judicata*, statute of limitations and choice of law/forum selections grounds.[5]    A copy of the CLC's June 29, 2007 Order is annexed as Ex. L of the Amended Statement of Claim, which is annexed to RLR's Petition to Vacate Arbitration Award as Ex. D.

On July 26, 2007, Webb appealed the CLC's Order dismissing Webb's Petition.[6] Based on the foregoing, it is apparent that Webb's actions in California are entirely incompatible with Webb's protestations throughout Resp's Opp. Memo that he is a victim of RLR's attempts to "harass" and that Webb merely wants these proceedings to end.  Resp's Opp. Memo, p. 5.  It was RLR who was victimized by Webb's continuing overzealous and wrongful conduct that was and continues to be designed to: (i) frustrate RLR's efforts to collect upon the Judgments; (ii) disgorge any monies collected by RLR pursuant to same Judgments; and (iii) force RLR to incur attorney's fees in enforcing and defending said Judgments to an extent that RLR's victories over Webb are pyrrhic.

In what can only be considered an intentional omission, Webb's twenty-one page Opp. Memo fails to even touch upon Webb's action against RLR in California.  The reason for Webb's omission is as transparent as it is duplicitous.   Webb's challenge to RLR's instant petition on the ground that "[t]here comes a time, we submit, when enough not only is enough, it is more than enough" (id. at 5), rings decidedly hollow in light of the fact that Webb is still litigating against RLR in California with the goal to disgorge from RLR the monies collected pursuant to the Judgments.  Ostensibly, Webb believes that RLR should cease any attempt to recover its attorney's fees incurred as a result of Webb's bad faith attempts to avoid paying the

---

[5] In its June 29, 2007 Order, the CLC denied jurisdiction on the grounds that RLR and Webb executed the pertinent contract in New York, and that the Contract had a New York forum selection and choice of law provision.
[6] Currently pending before the California Superior Court, Indio County, is RLR's summary judgment motion to dismiss Webb's *de novo* appeal of the CLC's Order.  A hearing on the motion is scheduled for February 15, 2008.

Judgments, while Webb should be simultaneously permitted to continue with his efforts in California to disgorge from RLR the monies collected pursuant to the Judgments.

Concerning the merits of Petitioner's Motion to Vacate, it is submitted in good faith and sets forth without question that despite Arbitrator Reiss being aware of the terms of the broad arbitration clause in the Agreement (a copy of the Agreement was submitted as an Exhibit in the Arbitration), he manifestly disregarded the inclusive jurisdictional language in the arbitration provision. There can be no good faith dispute that Arbitrator Reiss' Order manifestly disregarded the broad "any controversy or claim" language of the arbitration provision in the Agreement when finding that RLR's statement of claim was not arbitrable because it did not concern a "breach" of the Agreement.

The issue at bar does not concern Arbitrator's Reiss' alleged misinterpretation of the arbitration clause in the Agreement. Arbitrator Reiss' error was more profound and prejudicial; in issuing the Order, Arbitrator Reiss manifestly ignored the language of the arbitration clause in the Agreement that states: "any controversy or claim arising out of or related to this Agreement, or breach thereof, shall be submitted to arbitration . . .." Ex. A to Petition. Thus, Webb is incorrect, Arbitrator Reiss did not "explicitly consider" the broad arbitration provision in the Agreement (Resp's Opp. Memo, p. 10, citing, I Appel Corp v. Katz,. 2005 WL 2995387, (S.D.N.Y. Nov. 9, 2005), nor did Arbitrator Reiss merely make an erroneous contractual interpretation.

Notably, Respondent cites to no authority whereby an Arbitrator is permitted to **ignore** the contractual arbitration language between the parties. Rather, Respondent cites exclusively to case law supporting the proposition -- irrelevant to the facts at bar -- that a Court will not vacate an Arbitration Award based upon the Arbitrator's interpretation of a contract.

Resp's Opp. Memo, pp. 8-11.  Much more egregious and prejudicial was Arbitrator Reiss' error in failing to even consider the more inclusive broad language of the arbitration provision in the Agreement.

Lastly, Webb's silence in response to Point (C) of RLR's Memorandum of Law in Support of Motion to Vacate must be construed as acquiescing in the fact that Webb, merely by filing his petition before the CLC, breached the New York arbitration and choice of law provision in the Agreement.  Accordingly, Arbitrator Reiss' Order must be vacated.

**ARGUMENT**

**I.**

**WEBB HAS FAILED TO DEMONSTRATE THAT**
**ARBITRATOR REISS DID NOT MANIFESTLY DISREGARD THE LAW**

Webb's Memorandum avoids any serious substantive argument, rather employing an overdose of inflammatory language, which is objectionable not only because of Webb's intention to bias the Court, but also for his attempt to divert the Court's attention from Webb's own efforts to frustrate RLR's enforcement of the Final Award for over 4 years.

Webb begins his argument by stating that the purpose of arbitration is "to provide for a reasonably prompt and efficient forum in which parties may seek disposition of their grievances."  See Resp's Opp. Memo at p. 6.  Webb's position is grossly hypocritical, given the fact that he has made a mockery of the entire arbitration process by unjustifiably refusing to honor the Final Award for 4½ years, triggering nine (9) proceedings in a myriad of venues in an effort to nullify the Final Award and disgorge from RLR the monies collected pursuant to the federal judgments.  Indeed, it is not a hyperbole to state that Webb's post-arbitration conduct has attempted, and thus far succeeded, in eviscerating the very purpose behind arbitration as a cost-efficient alternative to litigation, instead making arbitration a mere prelude to litigation.  Thus,

9

for Webb to now tout the purposes of arbitration would be comical, if not for the great costs suffered by RLR as a result of Webb's efforts to distort the very purpose of arbitration.

As accurately cited by both RLR and Webb, one of the grounds upon which a party may properly apply for vacatur of an arbitration award is when an arbitrator manifestly disregards the law; that is, refuses to apply or wholly ignores a well-defined, explicit and applicable legal standard. See Resp's Opp. Memo, p. 8. However, Webb, in his Memorandum, entirely mischaracterizes the basis upon which RLR's argument is premised, alleging that Arbitrator Reiss "misread" the arbitration clause. See Resp's Opp. Memo p. 9. This is far from RLR's position. Contrary to Webb's erroneous interpretation, RLR is not claiming that Arbitrator Reiss merely "misinterpreted" the language of the arbitration clause. Rather, what Arbitrator Reiss did was wholly ignore the most pertinent portion of the Agreement's broad arbitration clause. In doing so, Arbitrator Reiss not only manifestly disregarded an entire, applicable portion of the arbitration clause and the law upon which it is based but, in doing so, also deprived RLR of its basic right to arbitrate, for which broadly worded arbitration clauses provide.

As clearly set forth in RLR's Memo, Arbitrator Reiss manifestly disregarded the law in dismissing RLR's claim for attorneys' fees by, inter alia, blatantly ignoring the most pertinent and crucial part of the Agreement's broad arbitration provision, which explicitly stated that "**any controversy or claim arising out of or relating to this Agreement**, or breach thereof, shall be submitted to arbitration in New York New York, in accordance with the Commercial Arbitration Rules of the American Arbitration Association," and that the Arbitrator may award, "**without limitation**, interest, costs, expenses and attorneys' fees as the Arbitration may award in its discretion." See Agreement, Exhibit A to the Petition. Without a hearing and as a matter of

law, Arbitrator Reiss, in his manifest disregard of the entire first half of the arbitration clause, stated that "[RLR does] not present a controversy or claim **arising from the breach of the agreement** at issue [but] rather they arise from claimant's efforts to enforce the final arbitration award."[Emphasis added]. See Award at p. 2, Ex. F to Petition.  Indeed, in doing so, Arbitrator Reiss wrongfully narrowed the scope of a broad arbitration clause, which not only expressly differentiates between "any controversy or claim arising out of or relating to" the Agreement and a "breach" of the Agreement, but which also was precisely intended to include "any controversy or claim arising out of or relating to [the] Agreement."  See Id.

Webb fails to cite to any case law to even remotely challenge the fact that a claim for attorneys' fees in the enforcement of an arbitration award has been widely held to fall within the purview of such a broad arbitration provision, particularly when it arises out of and/or relates to the enforcement against a losing party's unjustified refusal to pay an arbitration award. Moreover, as previously discussed in Petitioner's Memorandum, "any doubts concerning the scope of arbitrable issues should be resolved **in favor of arbitration**." [Emphasis added.] See Threlkeld & Co. v. Metallgesellschaft, 923 F.2d 245, 248 (2nd Cir. 1991), quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-942, 74 L.Ed.2d 765 (1983); see also Matter of Weinrott, 32 N.Y.2d 190 (1973) ("a broad arbitration clause should be given the full effect of its wording in order to implement the intention of the parties.")  Further to that, case law has clearly set forth that "when a challenger refuses to abide by an arbitrator's award without justification, attorneys' fees and costs may properly be awarded."  See Int'l Chemical Workers Union v. BASF Wyandotte Corp., 774 F.2d 43, 47 (2d Cir. 1985) quoting Bell Production Engineers Ass'n v. Bell Helicopter Textron, 688 F.2d 997, 999 (5th Cir. 1982).  More specifically, examples of frivolous or vexatious conduct,

providing a valid basis for an award of fees, have been held to include, <u>inter</u> <u>alia</u>, efforts to overturn or frustrate the enforcement of a judgment and/or motions on matters already decided on the merits.  See <u>Levy v. Carol Mgmt. Corp.</u>, 260 A.D.2d 27, 34 (1st Dept. 1999); <u>see</u> <u>also</u> <u>Dutch Church v. 198 Broadway</u>, 76 N.Y.2d 411, 414 (1990); and <u>Matter of Gordon v. Marrone</u>, 202 A.D.2d 104, 110 (2d Dept.1994).

Webb, in his unjustified and vexatious efforts to nullify the Final Award demonstrated in the nine proceedings following the issuance of the Final Award (which Arbitrator Reiss believed was "intended to frustrate and delay" (Petition, Ex. D, p. 2) RLR's enforcement of the Final Award), has provided a substantial basis for entitling RLR to the attorneys' fees incurred by RLR in its efforts to defend against Webb's bad faith, post-arbitral conduct to frustrate enforcement of the Final Award.  With the dismissal of Webb's claims in a number of post-Final Award proceedings on the grounds of *res judicata*, along with Webb's bad faith efforts to nullify the Final Award since its issuance in 2003, Webb's conduct has undoubtedly met, and exceeded, the vexatiousness requirement.

Arbitrator Reiss cannot manifestly ignore the language of an unequivocal, broadly drafted arbitration provision, whose very language reflects the parties' intent to arbitrate such issues, and the pertinent law that must be applied to such a provision: "any doubts concerning the scope of arbitrable issues should be resolved **in favor of arbitration**." [Emphasis added.] <u>See</u> <u>Threlkeld & Co. v. Metallgesellschaft</u>, 923 F.2d 245, 248 (2nd Cir. 1991), <u>quoting</u> <u>Moses H.</u> <u>Cone Memorial Hospital v. Mercury Construction Corp.</u>, 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-942, 74 L.Ed.2d 765 (1983).

Contrary to Webb's analysis, this is not a matter of contract interpretation, but rather a manifest disregard not only of key terms within the arbitration clause, but also of well-

settled, substantive law.  What the parties' Agreement and, in turn, the American Arbitration Association's Commercial Rules, entrusted in the Arbitrator is the power to interpret contract terms, not the discretion to manifestly ignore pertinent portions of a broadly-worded arbitration provision.  It is respectfully submitted that, Arbitrator Reiss not only failed to apply the correct law, but also neglected to read more than half of the pertinent language in the Agreement's arbitration provision, such a failure is not within an arbitrator's discretion.  In doing such, Arbitrator Reiss manifestly disregarded the entirety of the parties' broad arbitration clause, and the well-settled law that supports RLR's claim for attorneys' fees under same.

Resp's Opp. Memo also disregards the fact that the Southern District of New York confirmed the arbitrability of RLR's claims for legal fees.  As previously set forth in RLR's Memo, Judge Baer, in his November 24, 2003 Order, expressly ruled that RLR must arbitrate its claim for attorneys' fees in the confirmation and enforcement of the arbitration award.  See RLR's Memo at pp. 19-20.  He further acknowledged that the Arbitration Agreement provided that an award for attorneys' fees arising out of the confirmation and enforcement of the Final Award, is in the Arbitrator's discretion.  See Id.  Judge Baer's rationale was premised on the fact that, because a confirmation proceeding logically follows an Arbitration and the issuance of the Final Award, any claim for attorneys' fees post-dating the Final Award, e.g., RLR's confirmation and enforcement of said Award against Webb, must go back to an Arbitrator.  By entirely ignoring Judge Baer's own instruction, Arbitrator Reiss, in what is a clear manifest disregard of the law, thereby wholly disregarded a federal court's holding on a well-defined, explicit and clearly applicable principle to the issue at bar.  See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Savino, 2007 WL 895767 at *6 (S.D.N.Y. 2007), citing Hoeft v. MVL Group, Inc., 343 F.3d 57, 64 (2d Cir. 2003).

Judge Baer's determination in his November 24, 2003 Order that the issue of RLR's attorney's fees must be arbitrated also establishes the misguided nature of Webb's argument that RLR was required to seek its attorneys' fees arising from Webb's appeal of Judge Baer's June 1, 2005 Order, pursuant to Fed.R.App.P. 38.     Resp's Opp. Memo, p. 16-17. Pursuant to Judge Baer's November 24, 2003 Order, which was law of the case, the terms of the Agreement between the parties required that any legal fees arising from RLR's efforts to enforce the Final Award (that, by necessity, included RLR's attorney's fees incurred from opposing Webb's appeal that sought to vacate the Supplemental Judgment) must be sought in arbitration. The impact of Judge Baer's finding in his November 24, 2003 Order required that if RLR sought to recover its attorneys' fees incurred in opposing Webb's appeal, RLR must seek said attorney's fees in arbitration.

Correspondingly, as a practical matter, at the time Webb filed his appeal of the Supplemental Judgment, RLR was incurring substantial legal fees in New Jersey, due to the fraudulent conveyance action, and also faced the prospect of incurring additional substantial legal fees as a result of Webb's petition before the CLC in California. Therefore, any application by RLR to the Second Circuit for attorneys' fees related strictly to Webb's appeal would have represented an unfeasible piecemeal approach to the recovery of RLR's attorney's fees.

Resp's Opp. Memo also fails to address, albeit mention, the fact that Arbitrator Reiss manifestly disregarded the law by dismissing RLR's motion to amend its Statement of Claim seeking attorneys' fees related to Webb's California action against RLR. Despite the issuance of the Final Award on July 31, 2003, and notwithstanding that the parties had explicitly agreed to a New York arbitration forum and the application of New York law for the resolution of their disputes, Webb, in October 2003 filed a Petition challenging RLR's status as a licensed

14

talent agency before the California State Labor Commissioner. In said Petition, Webb attempted to use the California Talent Agencies Act to and sought to disgorge from RLR's the monies collected pursuant to the federal court judgments. In filing said Petition, Webb breached the Agreement's New York arbitration provision, as well as its New York choice of law provision.[7]

Arbitrator Reiss, in denying RLR's motion to amend its Statement of Claim, and in his determination that there was no issue of fact concerning whether or not Webb breached the Agreement despite Webb's filing his Petition before the CLC (and subsequent appeal), manifestly disregarded the law by determining that RLR's attorneys' fees, incurred in the CLC action, did not arise out of a "breach" of the Agreement. In fact, it is beyond comprehension how the Arbitrator could determine that Webb, by filing his Petition before the CLC in California -- a dispute that Webb expressly alleges arose out of the pertinent Agreement, which contains a New York arbitration and choice of law provision -- did not concern "a claim or controversy arising from the breach of the agreement at issue . . .." See Petition, Ex. F, at p. 2. Indeed, Webb, by the very act of filing the Petition before the CLC, breached the Agreement.

Webb continues with his hypocritical arguments by insisting that "all post-arbitral enforcement proceedings should have come to an end." Resp's Opp. Memo, p. 2. One wonders where Webb summons the gall to make such a statement given his unjustifiable refusal to honor the Final Award from July 31, 2003 to date, as said refusal forced RLR to incur vast attorney's fees, thereby making it necessary for RLR to continue with post-arbitral proceeding. Moreover, Webb's wish that all enforcement proceedings come to an end, cannot possibly bear any credence, as he filed an action in the Superior Court of California on or about July 26, 2007, appealing the CLC's Order. Notably, the CLC Order dismissed Webb's Petition on the grounds

---

[7] Webb's Petition, now converted into a "Complaint" by the Court in California, alleges that the dispute arose out of the very Agreement that contains the New York arbitration and forum selection provisions. See Brown Aff, Ex. C at 2, l. 21-22

of *res judicata* and statute of limitations, holding, <u>inter</u> <u>alia</u>, that "Webb, having lost in the New York and arbitral forums, is seeking to re-litigate the issue of whether the commissions are due to RLR" and further stating that "Webb is not raising the Act as a defense, but instead is seeking disgorgement of any monies that may be received pursuant to the judgment." <u>See</u> Ex. L to the Amended Statement of Claim at pp. 3-4, previously annexed to the Petition at Ex. D.

In fact, as far back as November 2003, when RLR sought to enjoin Webb's Petition before the CLC, Judge Baer stated to Webb's counsel, with respect to whether Webb's "marathon" litigation of the Final Award constituted harassing and bad faith litigation, "you are close in my book." <u>See</u> Hearing Transcript Before Judge Baer dated November 7, 2003 at 13 L. 23----14 L. 2, pertinent pages of which are annexed to the accompanying Brown Reply Aff. as Ex. A. At the same hearing, Judge Baer further stated that Webb was engaging in a pattern of activity whereby "it seems to me it is just part of the problem that I see here which is one litigation and one delaying tactic piled onto another litigation and another delaying tactic." <u>See</u> <u>Id.</u> at 16 L. 1-14. Since Judge Baer's 2003 statement, Webb's efforts to delay and frustrate RLR's efforts to confirm and enforce the Final Award have only significantly expanded. Therefore, Webb's post-arbitral conduct and present appeal of the CLC Order dismissing his Petition, is hardly the conduct of a man who "wants to get on with his life in peace." Resp's Opp. Memo, p. 19. If peace was, in fact, what Webb wanted, he would have immediately tendered all of the monies rightfully due to RLR pursuant to the Final Award and the November 2003 Judgment, and would not presently be appealing the Order of the CLC dismissing Webb's Petition.

In another attempt at misleading the Court, Webb mischaracterizes RLR's good faith claim for legal fees as a "meretricious," "vicious personal vendetta." Resp's Opp. Memo,

16

p.1.  RLR has nothing against Webb.  RLR, in its own right, only seeks the complete relief that

the Final Award had intended. However, perhaps as important as RLR's right to a full recovery,

is that Webb's conduct, which has shown utter disdain for arbitration as a cost-efficient, fair and

effective alternative to litigation, should not be countenanced.  In what holds to be a matter of

equity, RLR should not be penalized for the repercussions of Webb's own unjustifiable and

vexatious conduct in refusing to pay the Final Award, forcing RLR to expend a significant

amount in legal fees in its enforcement (and defense) of same.

**II.**

**<u>WEBB'S CROSS-MOTION FOR SANCTIONS SHOULD BE DENIED</u>**

Webb's basis for seeking sanctions against RLR is not only wholly meritless but

profoundly arrogant.  In his Memorandum, Webb inaccurately portrays RLR's claim for legal

fees incurred in its enforcement and defense of the Final Award as an "exercise in utter futility, a

thoroughgoing waste of time, energy, money and resources."  <u>See</u> Resp's Opp. Memo at p. 12.

However, up until the instant arbitration that RLR seeks to vacate, RLR has been victorious

against Webb at every stage and proceeding in their dispute.   For Webb to now argue that RLR,

merely by moving to vacate Arbitrator Reiss' Order, should be subject to sanctions, ignores

Webb's mockery of the entire arbitration process by unjustifiably refusing to honor the Final

Award for 4½ years, triggering nine (9) proceedings in a myriad of venues in an effort to nullify

the Final Award and disgorge amount collected by RLR pursuant to federal judgments

confirming same.  Webb's conduct has frustrated the very purpose behind arbitration as a cost-

effective and time-efficient alternative to litigation.  It is respectfully submitted that to award

Webb sanctions would be to confirm that Webb's post-Final Award conduct was not only

permissible, but moreover, laudable.

17

Webb continues his misplaced reliance on the confines of the American Rule with respect to attorneys' fees.  <u>See</u> Resp's Opp. Memo, p. 13.  Although the American Rule, as Webb emphasizes in Resp's Opp. Memo, generally precludes a prevailing party from recovering attorneys' fees, the American Rule is not applicable to the facts at bar for two independent reasons.

First, as previously noted in RLR's Memo, in connection with suits for the confirmation and enforcement of arbitration awards, the Second Circuit has long followed the guiding principle that "when a challenger refuses to abide by an arbitrator's decision without justification, attorneys' fees and costs may be properly awarded."  <u>See</u> <u>Int'l Chem. Workers Union v. BASF Wyandotte Corp.</u>, 774 F.2d 43, 47 (2d Cir. 1985) (quotation marks omitted) <u>quoting</u> <u>Bell Prod. Engineers Ass'n v. Bell Helicopter Textron</u>, 688 F.2d 997, 999 (5th Cir. 1982).

Simply put, the American Rule does not apply to the facts at bar.  Since July 31, 2003, the date of the Final Award, Webb has made an overwhelmingly conscious effort to evade payment of the Final Award, and disgorge the monies due pursuant to the Federal judgment confirming same.  Moreover, Webb has refused, without justification, to make any payments on the Final Award until it was clear that his post-arbitral proceedings to nullify said Final Award would prove fruitless.  In doing so, RLR was forced to incur attorneys' fees that exceed the amount collected pursuant to the November 2003 Judgment.

Second, Fed.R.Civ.P. 54 permits such a claim if the moving party can support its claim by "statute, rule, or other grounds entitling the moving party to the award."  <u>See</u> Fed. R. Civ. P. 54(d)(2)(B); <u>see</u> <u>also</u> <u>Universal Computer Services, Inc., v. Dealer Services Inc.</u>, 2003 WL 21685567 at ** 2 (E.D.N.Y. 2003).

As stated in Point I *supra*, the broadly-worded provision of the Agreement to arbitrate clearly demonstrates the parties' intent to include attorneys' fees as one of the recoverable expenses.  Not only does the provision designate arbitration for any claim or controversy that arises from or relates to the Agreement, but it explicitly provides for the availability of attorneys' fees at the discretion of the Arbitrator.  In addition, in the initial Arbitration, Arbitrator Edelman awarded RLR legal fees that were incurred during the Arbitration through May 31, 2003, the date of the first Interim Award.  Thus, if the Arbitrator awarded legal fees for the Arbitration itself, surely to make the Final Award meaningful, a party would be entitled to the fees incurred in those post-arbitration proceedings specifically designed to enforce the very same award (and to defend against Webb's efforts to nullify same).  It is, therefore, unmistakably clear that the Agreement to arbitrate provides for the recovery of attorneys' fees.

Moreover, Webb's allegation at page 13 of Resp's Opp. Memo, that "arbitration has twice determined that the scope of the parties' agreement did not provide for an arbitral award of counsel fees incurred in non-arbitral proceedings" is another patently false attempt by Webb to mislead the Court.

Arbitrator Edelman's **March 11, 2003** Interim Order, upon which Webb relies, cannot – as a matter of law – have any preclusive effect (whether it be *res judicata*, collateral estoppel and/or law of the case) on RLR's ability to recover its attorneys fees arising from Webb's wrongful conduct occurring subsequent to the **July 31, 2003** Final Award (i.e., the various proceedings RLR had to endure to collect upon the Final Award as confirmed by the November 2003 Judgment).  Furthermore, Arbitrator Edelman's March 11, 2003 Interim Order was limited to the extent that it only addressed (i) events that transpired between RLR and Webb

when there was no Arbitration provision between the parties *i.e.*, from in or about October 1990 through May 1997 (thus, no applicable attorneys' fees provision between RLR and Webb); (ii) only addressed attorneys' fees incurred by RLR **prior** the Final Award; and (iii) RLR's request for attorneys' fees related to a then-pending, but dormant, litigation. As such, Arbitrator Reiss should have, at the very least, granted a hearing to hear evidence supporting RLR's claim for attorney's fees associated with Webb's efforts to nullify the Final Award. See RLR's Memo at p. 19.

Secondly, contrary to Webb's assertion, the fees incurred in the prior confirmation proceeding were denied by Judge Baer in his November 24, 2003 Order because, as manifestly disregarded by both Webb and Arbitrator Reiss, Judge Baer expressly held that the issue of RLR's recovery of post-Final Award attorneys' fees **cannot** be addressed by the Court, but can only be addressed in Arbitration, pursuant to paragraph 10 of the Agreement. See Petition, Ex. E at p. 19, n. 24.

Webb also improperly states that there is no authority standing for the proposition that an Arbitrator has the same inherent equitable powers as that of a court of law. To the contrary, an Arbitrator is not strictly bound by principles of substantive law, which govern traditional litigation. Consistent with this long-standing principle, an Arbitrator's paramount responsibility is to reach an equitable result, and "may do justice as he sees it, applying his own sense of law and equity to the facts as he finds them to be." See Matter of Sprinzen, 46 N.Y.2d 623, 629 (1979); Matter of Silverman (Benmor Coats), 61 N.Y.2d 299, 308 (1984).

Furthermore, as anticipated in RLR's Memo, Webb argues that an award for attorney's fees is beyond the scope of an arbitrator's authority, improperly relying on Universal Computer Services, Inc. v. Dealer Services, Inc., [cite] and urging that an arbitration on

attorneys' fees will lead to "an endless cycle of arbitration followed by litigation followed by arbitration, followed by litigation and so on, and on forever [] a perpetually winding spiral of ever-increasing expense." See Resp's Opp. Memo, p. 18. Webb's protestations of an "endless cycle" of legal proceedings and "perpetually winding spiral of ever-increasing expense" certainly did not temper Webb's own conduct. Resp's Opp. Memo, p. 18. Once again, the irony could not be clearer. It has been Webb's own extensive efforts to nullify the Final Award and frustrate RLR's efforts to collect the monies due pursuant to same, that has resulted in nine (9) post-arbitral proceedings, and has caused RLR to suffer significant financial losses that have substantially exceeded the amount of the Final Award. As already discussed in RLR's Memo, it is for this reason that RLR did not apply for the recovery of attorneys' fees after every post-arbitration proceeding since the issuance of the Final Award, namely to avoid multiplying the proceedings and litigation *ad infinitum*. See RLR's Memo at pp. 13-14.

It is also important to note that, contrary to Webb's flawed perception, RLR is not "threaten[ing] to follow up this litany of futility and failure with yet more meritless litigations and actions in this Court" by advising the Court that it will seek the disputed legal fees in a unitary equitable claim before the Southern District of New York in the event the Court decides to deny vacatur of Arbitrator Reiss' Arbitration Award. See Resp's Opp. Memo at p. 13. Rather, RLR, in its own right, only seeks the complete relief that the Final Award had intended.

Finally, it is highly ironic, but not surprising, that Webb comes before this Court seeking sanctions against RLR when Webb has even refused to comply with the terms of Arbitrator Reiss' Order requiring that Webb pay RLR. As set forth in Arbitrator Reiss' Order: "Respondent shall reimburse Claimant the sum of $2,125.00, representing that portion of said fees in excess of the apportioned costs previously incurred by Claimant." See Petition, Ex. D,

pp. 3-4.  Webb has refused to comply with Arbitrator Reiss' instructions.  Indeed, once again, Webb attempts to hold RLR to an extortionate demand by requiring the execution of a general release in Webb's favor.

By letter dated December 6, 2007, Mr. Ullman, Webb's counsel, enclosed a check in the amount of $2,125.00 to RLR and, as with Webb's previous $98,390.21 check to RLR, required that counsel for RLR shall not distribute the $2,125.00 to RLR until RLR executed a general release in Webb's favor.[8]  A copy of the December 6, 2007 letter, check and proposed release is annexed to the Brown Reply Aff., as Ex. E.  However, as was the case with regard to Webb's previous demand that RLR execute a general release in order to distribute the $98,390.21 check in payment of the November 2003 Judgment, Webb, once again, has absolutely no right to demand RLR execute a general release in order to obtain the $2,125.00, required pursuant to Arbitrator Reiss' Order.  RLR objected and refused to comply with Webb's extortionate demand.  A copy of the letter from Rodney A. Brown to Jeffrey Ullman dated December 10, 2007, is annexed to the Brown Reply Aff. as Ex. F.

Despite Webb's position having no merit, Webb refuses to rescind his demand.  As such, RLR is in the untenable position of having its counsel distribute the $2,125.00, which would again no doubt lead to Webb and his counsel filing another grievance against RLR's counsel, or signing the general release, which would prevent RLR from seeking to recover its attorney's fees from RLR.  As such, RLR respectfully submits that in light of this conduct, Webb's application for sanctions is beyond frivolous.  The only sanctionable conduct at bar continues to be that of Webb -- not RLR.

---

[8] Of course, Webb's proposed general release would prohibit RLR from seeking to recover its attorney's fees incurred due to Webb's wrongful conduct.  Notably, it would not prevent Webb from continuing his appeal of the CLC's Order dismissing Webb's Petition.

**Conclusion**

Accordingly, based on the foregoing, Petitioner respectfully requests that its Motion to Vacate the Arbitration Award be granted in its entirety, and that Respondent's Cross-Motion for Sanctions be denied in its entirety.

Dated: January 28, 2008
      New York, New York

THE BROWN LAW GROUP, P.C.

By: *Rodney G. Brown*
      Rodney A. Brown (RB 7558)

Attorneys for Petitioner Robert Lewis
Rosen Associates, Ltd.
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 421-1845

23